911 So.2d 1263 (2005)
Lorraine TAYLOR and Donald Taylor, Appellants,
v.
Ignacio MAGANA, M.D., Ignacio Magana, P.A., Neurosurgery Clinic of the Palm Beaches, P.A., Luis Raso, M.D., Shirley Hill, C.R.N.A., Anesthesia Associates of Palm Beach Gardens, P.A., and Palm Beach Gardens Community Hospital d/b/a Palm Beach Gardens Medical Center, Appellees.
No. 4D04-2311.
District Court of Appeal of Florida, Fourth District.
October 5, 2005.
*1265 Christopher J. Lynch of Hunter, Williams & Lynch, P.A., Miami, for appellants.
Alicia M. Trinley of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., West Palm Beach, for appellees Ignacio Magana, M.D., Ignacio Magana, P.A. and Neurosurgery Clinic of the Palm Beaches, P.A.
HAZOURI, J.
Lorraine and Donald Taylor (hereinafter Taylor) appeal the trial court's denial of their motion for new trial based on the fact that a juror did not disclose a pending lawsuit in response to voir dire questioning. We reverse.
Taylor sued Ignacio Magana, M.D. and Ignacio Magana, P.A., among others not pertinent to this appeal, for medical malpractice.
At trial, each of the persons in the venire were furnished a printed questionnaire entitled "general voir dire questionnaire." The initial portion of the voir dire was conducted by the trial judge herself by asking each juror to respond to the questions on the printed questionnaire. The questionnaire asked for the following information: name; community; occupation and duration; list of all occupations during adult life; marital status, whether married, single, divorced, or widowed; occupation of spouse; occupation of adult children; prior jury service; whether juror or immediate family member has been a party to a lawsuit, and if so, whether plaintiff or defendant; whether a personal injury claim was made against juror or family member; whether juror or family member ever made a claim for personal injury; and whether juror was ever a witness.
During the voir dire conducted by the trial judge, the following discussion occurred between the trial judge and prospective juror, John Hill:
COURT: Mr. Hill.

*1266 HILL: My name is John Hill. I work at Winn-Dixie. Married or single, no.
COURT: Excuse me. Everything else is no?
HILL: Yes.
When Hill was subsequently individually questioned by the attorneys, he was asked only questions regarding his job, education, hometown, hobbies, and parents' occupations. At the conclusion of the trial, the jury returned a verdict finding that Magana was not negligent. A final judgment was entered in favor of Magana against Taylor.
Following trial, Taylor filed a Motion to Interview Jurors. The motion alleged that on the day of the verdict, juror Gilman Farley telephoned Taylor's attorney. Farley explained that he had given Hill a ride home after the trial and that Hill mentioned that he and his mother had been sued and that Taylor's attorney represented the party that sued them. The motion also indicated that a docket search revealed that Hill was a defendant in a pending case in Palm Beach County.
Taylor additionally filed a Motion for New Trial. One ground alleged in the motion was the misconduct of Hill in failing to reveal the lawsuit in response to the jury questionnaire.
The trial court granted the motion to interview jurors. The following discussion occurred at the interview:
PLAINTIFF: Was there any particular reason why you didn't tell the court when we were asking you questions, whether you had been a party to a lawsuit, you were the defendant in a lawsuit before we started the trial?
HILL: Maybe I didn't understand, that's why. To me it was over.
PLAINTIFF: You thought your case was over?
HILL: Yes.
* * * * * *
DEFENSE: Sure. When we were asking you questions when we were trying to pick jurors for this case, did you realize that the attorneys wanted to know about the case involving you and your mom?
HILL: No.
DEFENSE: You didn't, okay.
Did you purposely try to hide from us, the lawyers, the fact that you had been involved in this case with your mom?
HILL: No. Because I don't understand. That's why.
The trial court entered a written order denying the motion for new trial. The order, in pertinent part, stated:
Under Florida law, the test for determining whether a juror's non-disclosure of information during voir dire warrants a new trial utilizes a three part test. First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, the complaining party must establish that the juror concealed the information during questioning. Lastly, the complaining party must establish that the failure to disclose the information was not attributable to the complaining party's lack of diligence. De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995).
In the case at bar, it is undisputed that the Plaintiff has satisfied part one of the De La Rosa test in that any information regarding juror John Hill's prior involvement in litigation was material and relevant to his jury service. Plaintiff, however, has failed to establish that John Hill purposely concealed information during voir dire. The interview of juror, John Hill, revealed that his failure *1267 to mention the prior litigation involving his mother during voir dire was the result of his lack of understanding and/or inability to comprehend the court proceedings and/or the questions being posed to him. In addition, John Hill demonstrated his lack of comprehension by advising the Court and the parties during the trial that he was not following the litigation and/or understanding the evidence and testimony as it was being presented. Despite that information and the fact there were alternate jurors available, neither party requested that Mr. Hill be excused from jury service.
Plaintiff has failed to establish that juror, John Hill's, failure to disclose information concerning his prior litigation was not attributable to his lack of diligence. A juror's answer cannot constitute concealment when the juror's response about litigation history is ambiguous and counsel does not inquire further to clarify the ambiguity. Tran v. Smith, 823 So.2d 210, 213 (Fla.5th DCA 2002). Information is only considered "concealed" by a juror on voir dire for purposes of the three-part test in determining whether a new trial is warranted if the information is "squarely asked for" and not provided. Birch v. Albert, 761 So.2d 355, 358 (Fla. 3d DCA 2000). Plaintiff's counsel cannot establish that John Hill's failure to disclose information concerning his prior litigation was not attributable to his lack of diligence.
(Emphasis added).
The standard of review applicable to an order on a motion for new trial is abuse of discretion. See Hertz Corp. v. Gleason, 874 So.2d 1217, 1219 (Fla. 4th DCA 2004) (citing Brown v. Estate of Stuckey, 749 So.2d 490 (Fla.1999)). This standard of review equally applies under the more specific circumstances of this case:
The standard of review of a trial court's order granting a new trial because of juror concealment of information is abuse of discretion. Garnett v. McClellan, 767 So.2d 1229, 1231 (Fla. 5th DCA 2000). If reasonable people could differ as to the propriety of the court's ruling, then the abuse of discretion standard has not been met. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980).
Vanderbilt Inn on the Gulf v. Pfenninger, 834 So.2d 202, 203 (Fla. 2d DCA 2002). Furthermore, "[a]s articulated by the court in [Roberts v.] Tejada, [814 So.2d 334, 345 (Fla.2002)], due deference is to be granted to the trial judge because it is at the trial level `that the dynamics and context of the entire trial process can best be evaluated.'" Id.
"`A juror who falsely misrepresents his interest or situation, or conceals a material fact relevant to the controversy, is guilty of misconduct, and such misconduct, is prejudicial to the party, for it impairs his right to challenge.'" De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995) (quoting Loftin v. Wilson, 67 So.2d 185, 192 (Fla.1953)). To determine whether such misconduct warrants a new trial, a three-part test applies:
First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence.
Id. (citation omitted). The parties agree that the first part of the test was satisfied in the case at bar.
Regarding the second part of the test, "a juror's nondisclosure need not be *1268 intentional to constitute concealment," because the impact remains the same, counsel is prevented from making an informed judgment regarding the composition of the jury and the utilization of his or her peremptory challenges. Roberts, 814 So.2d at 343-344. However,
attorneys must be mindful in this process to ask such questions in terms which an average citizen not exposed to a panoply of legal processes would be capable of understanding. Trial counsel must take special care during the interrogation process to explain in a lay person's terms all the types of legal actions which may be encompassed by the term "litigation," or other similar words commonly used by attorneys.
Id. at 344. To this end:
In order to establish concealment, the moving party must demonstrate, among other things, that the voir dire question was straightforward and not reasonably susceptible to misinterpretation. A juror's answer cannot constitute concealment when the juror's response about litigation history is ambiguous and counsel does not inquire further to clarify that ambiguity. Birch v. Albert, 761 So.2d 355, 357 (Fla. 3d DCA 2000).
Tran v. Smith, 823 So.2d 210, 213 (Fla. 5th DCA 2002). Overall, "[i]nformation is considered concealed for purposes of the three part test where the information is `squarely asked for' and not provided." Birch, 761 So.2d at 358 (citations omitted).
Moving to the third part of the test, "[t]he `due diligence' test requires that counsel provide a sufficient explanation of the type of information which potential jurors are being asked to disclose." Kelly v. Cmty. Hosp. of the Palm Beaches, Inc., 818 So.2d 469, 475 (Fla.2002). This includes articulating the types of lawsuits or claims being inquired about in the layperson's language favored by Roberts. See Tran, 823 So.2d at 213 n. 1. Additionally, counsel is expected to make further inquiry about litigation history where pertinent and ask follow-up questions to clarify or obtain relevant information. See Birch, 761 So.2d at 358.
Magana argues that the trial court's question "Everything else is no?" was not straightforward and was susceptible to misinterpretation, because it could refer to the remainder of the questions or the other two options within the current question (divorced and widowed). Because of these ambiguities, Magana asserts that Taylor's counsel was required to seek a clarification of Hill's answer in order for there to be concealment. Magana notes that Taylor's counsel did not seek to clarify Hill's responses and further questioning of Hill was not related to Hill's litigation experience. This lack of inquiry, Magana maintains, represented a lack of due diligence.
Taylor contends that the trial court erred by focusing on whether Hill's concealment of the lawsuit was purposeful because Roberts established that concealment need not be intentional to constitute misconduct. Additionally, Taylor asserts that there was no evidence establishing a lack of due diligence on the part of their attorney because the jury questionnaire asked specific questions regarding past litigation and Hill answered the questions in the negative, which was apparently clear to the parties and the trial court because no further inquiry was conducted. We agree.
It is clear that the trial judge applied the wrong standard in determining whether juror Hill's misconduct violated the second prong of De La Rosa, i.e., that the juror concealed the information which was relevant and material to his jury service. As we stated above, "a juror's nondisclosure need not be intentional to constitute *1269 concealment," because the impact remains the same, counsel is prevented from making an informed judgment regarding the composition of the jury and the utilization of his or her peremptory challenges. Roberts, 814 So.2d at 343. It is clear that the trial judge mistakenly concluded that the concealment must be purposeful and the application of this incorrect standard played a significant role in her conclusion not to grant a new trial.
Magana concedes the information not revealed was in fact relevant and material. The information concealed was that juror Hill and his mother were being sued as defendants in a personal injury action and juror Hill believed the plaintiff in the action against him was represented by the very lawyer that represented the plaintiff in the instant case.[1] It was also revealed during the juror interview that the case against juror Hill and his mother was scheduled to go to trial within a couple of weeks of when the voir dire was conducted. Whether juror Hill purposely concealed this information is irrelevant. Juror Hill's statement during the juror interview that "Maybe I didn't understand, that's why. To me it was over," does not alter Hill's responsibility to reveal the information. His mere profession of not understanding does not negate the concealment test. It is hard to imagine what it was juror Hill could not understand about the questionnaire given to him and his fellow jurors by the trial judge. The questionnaire included the following specific questions:
Have you or any member of your immediate family ever been a party to a lawsuit? Yes ______ No _______
If yes, were you or your immediate family member a:
9a. Plaintiff (Did you or your immediate family member bring the lawsuit?); _______
9b. Defendant (Was the lawsuit brought against you or immediate family member?). ______
10. Has a claim for personal injury ever been made against you or any member of your family? Yes ______ No ______
11. Have you or any member of your family ever made a claim for personal injuries? Yes ______ No ______
These questions are very specific, unambiguous, and not cluttered with sophisticated or confusing legalese.
The claim against juror Hill and his mother for personal injury was scheduled to go to trial within two weeks of his jury service and at the time of voir dire was believed by juror Hill to be prosecuted by Taylor's attorney, Stewart Williams. If under the facts of this case, the failure of juror Hill to disclose this information does not constitute concealment, then the second prong of the De La Rosa test is meaningless.
In addition to finding that the concealment by Hill was not purposeful, the trial judge also concluded that juror Hill's conduct did not rise to the level of requiring a new trial because his response about the litigation history was ambiguous and Taylor's counsel did not establish that Hill's failure to disclose information concerning his prior litigation was not attributable to counsel's lack of diligence.
*1270 It should be kept in mind that the questionnaire was handed out by the trial judge and the information obtained pursuant to the voir dire questionnaire was elicited directly by the trial judge herself. It is difficult to understand what is ambiguous about juror Hill's response. The trial judge determined that the juror's name was John Hill, that he was an employee of Winn Dixie and although it is unclear whether juror Hill is married or single, his answers to the remaining questions on the questionnaire were no. It is these remaining questions which are crucial to a determination of whether Hill could be a fair and impartial juror. It is unreasonable to conclude that if the answer to all of the remaining questions is no, that juror Hill had never served on a jury, nor had any member of his immediate family ever been a party to a lawsuit, neither he nor any member of his immediate family had ever been a plaintiff nor a defendant in a lawsuit, neither he nor any member of his immediate family had ever made a claim for personal injuries nor had a claim of personal injuries been made against them, that Taylor's counsel had reason to inquire further into these areas.
What additional questions would Taylor's counsel have asked Hill about his litigation experience? Had Hill indicated some lack of understanding as to what was meant by the questions or expressed some uncertainty as to his answers concerning any prior litigation or personal injury claims then it would have been incumbent upon Taylor's counsel to inquire further and exercise the due diligence required by De La Rosa. The question posed by the trial judge was "Excuse me, everything else is no," and Hill's answer was "yes."
If we were to accept the trial judge's rationale, then a preprinted jury questionnaire which a trial judge uses to conduct the initial portions of the jury selection process would be useless and a total waste of judicial effort unless the trial judge requires each prospective juror to answer each question specifically, line by line, to eliminate any possibility of ambiguity. Additionally, no trial lawyer could run the risk of failing to re-ask each and every question on the preprinted questionnaire for fear of failing to exercise due diligence.
The instant case is remarkably similar to the Third District Court of Appeal's decision in Bernal v. Lipp, 580 So.2d 315 (Fla. 3d DCA 1991). The Bernal case also involved a medical negligence case in which a member of the jury failed to reveal in response to questions about prior litigation that he had been a defendant in a personal injury case. Bernal, 580 So.2d at 316. As in the instant case, the jury returned a defense verdict. Through the course of the post-trial jury interview, it was learned that juror Alberto Parejo had been a defendant in an automobile accident case approximately one year prior to being called for jury duty. Parejo explained that his case had been a minor automobile accident which was covered by insurance and that it had been settled by the insurance company. He further explained that he did not interpret either the written questionnaire or the oral questions as calling for an affirmative answer, given the minor nature of the prior litigation. The trial court believed the juror's explanation was truthful and that the juror had not intentionally withheld information during voir dire. As a result, the trial court denied the motion for new trial. Id.
During the voir dire examination by plaintiff's counsel in Bernal, the prospective jurors were asked collectively if they had sued someone or had been sued, or had been a plaintiff or a defendant in a lawsuit. For each of the jurors responding affirmatively, plaintiff's counsel asked follow-up questions to ascertain the particulars. *1271 Juror Parejo remained silent and did not indicate that he had been a defendant in any lawsuit. As to the third prong, i.e., the failure to discover the concealed facts must not be due to the want or diligence of the complaining party, the district court observed that "plaintiffs' counsel made careful and diligent inquiry of each of the jurors regarding any prior experience in litigation, whether as a party or otherwise." Id. at 317. Unlike the instant case where the trial judge specifically elicited Hill's response concerning prior litigation, the juror in the Bernal case simply remained silent in response to the collective questions posed by plaintiffs' counsel as to whether any of the jurors had been either a plaintiff or a defendant in a lawsuit.
In reviewing the trial court's failure to grant a new trial, the district court observed that the information concerning the prior litigation was concealed from plaintiffs' counsel, and as a result, plaintiffs' counsel lost the right to make an intelligent judgment as to whether a juror should be challenged. Id. at 316. The district court further noted that the information had been squarely asked for and was not provided and "[a]lthough the juror did not intend to mislead plaintiffs' counsel, the omission nonetheless prevented [plaintiffs'] counsel from making an informed judgment which would in all likelihood have resulted in a peremptory challenge." Id. at 316-17.
Taylor established that the information concerning the prior litigation was relevant and material to Hill's jury service in the case, juror Hill concealed the information during the questioning, and the failure to disclose the information was not attributable to Taylor's lack of diligence. We therefore conclude that the trial judge abused her discretion in failing to grant Taylor's motion for a new trial based upon juror misconduct. We reverse and remand for a new trial.
Reversed For New Trial.
WARNER, J., concurs.
GUNTHER, J., dissents with opinion.
GUNTHER, J., dissenting.
I respectfully dissent.
I recognize that the trial court applied an incorrect legal standard regarding the second part of the test where it concluded that Hill had not purposely concealed the pending lawsuit. However, despite applying the incorrect legal standard, the trial court properly concluded that the Taylors did not carry their burden of demonstrating concealment, especially where it applied the proper legal standard for the second part of the test in its discussion of the third part of the test. The trial court's question to Hill was ambiguous, particularly where voir dire questioning became increasingly abbreviated as it ran its course, and Hill's response to the question was ambiguous, particularly where it is evident from the record that Hill had a difficult time comprehending the proceedings. It was unclear in both instances what questionnaire item (or items) was being discussed. Additionally, the Taylors' counsel failed to clarify these ambiguities by further inquiry. Under this scenario, it cannot be said that information regarding the pending lawsuit was "squarely asked for" and not provided by Hill. As such, the Taylors failed to satisfy the three-part test necessary to obtain a new trial based on juror concealment.
Furthermore, I disagree with the majority that it is any unduly harsh burden to expect the trial court and counsel to insure that prospective jurors specifically answer each question included in a voir dire questionnaire. Presumably each *1272 question is included in the questionnaire because it is pertinent to the selection of the jury. If each question is pertinent, each answer is also pertinent. Counsel should always insure that clear answers relating this pertinent information are provided by prospective jurors. In the case at bar, the Taylors' counsel should have sought clarification as to whether Hill was responding to the remainder of the marital status question (as a no answer to that question in itself was ambiguous, where a person must be either married, single, divorced, or widowed) or all remaining questions in the questionnaire, and secured specific answers to each question regarding litigation experience, as these questions were obviously crucial to the selection of the jury. In my view, it cannot be said that the Taylors satisfied the three-part test necessary to obtain a new trial based on juror concealment.
I would conclude that the trial court did not abuse its discretion and affirm.
NOTES
[1] During the post-trial juror interview, it was determined that juror Hill was mistaken in his belief that plaintiff's counsel, Stewart Williams, or his law firm was involved in juror Hill's case.