THOMAS, J.
Appellants challenge the trial court’s order granting Appellee a new trial due to purported juror misconduct. We reverse because Appellee failed to demonstrate the juror concealed material and relevant information. Because we find that the trial court abused its discretion by granting Appellee’s motion for new trial, we reverse and remand for reinstatement of the jury verdict.

Factual and Procedural Background

Appellee sued Appellants for dental malpractice. Appellee suffered temporo-mandibular joint (“TMJ”) dysfunction and related facial injuries, which required extensive reconstructive surgery. Early in voir dire, Appellee’s counsel stated:
We allege that [Appellant Dr. Otley] dislocated [Appellee’s] temporomandibu-lar joint ... as a result of an extraction procedure ... [a]nd as a result it caused her to undergo four hospital surgeries and that she is due to have the fifth in the future to reconstruct her jaws. Now, knowing that that’s the type of case you are going to be hearing and knowing in advance that the damages in this case are tremendous, do you have any hesitancy ... as to whether or not you think you could be fair and impartial ... ?
(emphasis added). In response, a potential juror immediately informed the court that he had negative experience with dental care, and he was dismissed.
Counsel for Appellee proceeded to engage in a lengthy discussion with the veni-re regarding damages, caps on damages, prior experiences, and opinions regarding medical malpractice. Counsel thoroughly inquired about any connections the jurors or their families might have with the medical, dental, or legal profession. Counsel also had a discussion regarding the jurors’ prior dental experiences, and specifically asked if anyone had had a tooth pulled by a dentist or oral surgeon. Additionally, counsel inquired about whether any of the jurors had been diagnosed with TMJ dysfunction. After receiving no response, counsel asked the following question: “Has anybody ever had facial reconstructive surgery?” None of the potential jurors responded to the question.
Counsel did not explain, describe, or define what he meant by “facial reconstruction surgery.” Nor did counsel explain that he was inquiring about all types of procedures, including ones outside the context of his voir dire. He made no further references to “facial reconstructive surgery.” Instead, he discussed the anticipated trial structure and the fact that he was going to call dental and oral surgeons as expert witnesses. Counsel never referred to any plastic surgeons or issues regarding plastic surgery.
After a four-day trial, the jury returned a verdict in favor of Appellants. Appellee timely filed a motion for new trial and a motion to interview a juror, alleging that the juror failed to disclose that she “underwent cosmetic facial reconstructive surgery in the recent past.” (emphasis added). The trial court ordered that the juror be *916 interviewed by both parties in a deposition setting to determine whether the juror had previously undergone facial reconstructive surgery and, if so, the extent of that surgery.
The interview occurred several months after the trial. The juror responded that she had had a facelift under general anesthesia. She also had excess skin removed from her eyes, a cheek lift, an implant inserted in her chin, and laser skin treatment. She testified that she did not consider her procedures to be facial reconstructive surgery because they were done for purely cosmetic reasons. Neither her plastic surgeon nor his staff ever called the procedures reconstructive surgery.
The juror testified that she knew two people who underwent reconstructive surgery. One person’s face had collapsed and he required surgery to completely reconstruct his face; the other person was injured by an explosion and required metal plates to reconstruct his face. The juror testified that these were the types of procedures she considered reconstructive. The juror also stated that she did not make a connection between the phrase “facial reconstructive surgery” and her facial cosmetic surgery. Although the juror could not recall precisely what she thought when she heard Appellee’s question, she did not link the phrase “reconstructive surgery” to her facelift and chin augmentation. She stated that if counsel had asked whether any prospective juror had received a facelift, elective facial surgery, or a facial procedure, she would have answered yes. The juror testified that her experience of having a facelift and chin augmentation did not affect her decision in this case.
Appellee’s counsel filed an affidavit in which he stated that it was crucial to know whether a potential juror had “elective cosmetic surgery” versus “medically necessary reconstructive surgery.” Appellee’s counsel asserted that he “surely would have stricken” this juror from the panel with his remaining peremptory challenge.
After reviewing some photographs of the juror depicting her face before and after the facelift and chin augmentation, the trial court granted Appellee’s motion for new trial. The trial court noted that the average person would not consider a facelift as major reconstructive surgery. However, it found that the chin augmentation was reconstructive surgery. Based on the combination of surgical procedures to reshape the juror’s face, the trial court found that the juror did have facial reconstructive surgery. The trial court found that the undisclosed facts were material, that they were concealed by the juror, and that the failure to discover the facts was not due to lack of diligence by Appellee.

Analysis:

Did the Juror Conceal Material and Relevant Information?

This appeal is based on a single question which Appellee’s trial counsel asked the prospective jurors during an extensive voir dire examination focused on alleged dental malpractice involving a severely injured TMJ: “Has anybody ever had any facial reconstructive surgery ? ” (emphasis added). Appellee’s counsel did not ask any other questions relating to general facial surgery, cosmetic surgery, or specific questions about facelifts or facial implants.
In De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995), the Florida Supreme Court set out the following test for juror misconduct: “First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information *917 was not attributable to the complaining party’s lack of diligence.”
We first discuss the second prong of the De La Rosa test, as it is clear there can be no juror misconduct, regardless of materiality, when a juror correctly answers a voir dire question. Neither a facelift nor a chin augmentation is “reconstructive surgery” as defined or as commonly understood. No record evidence supports the conclusion that the juror gave false information by assuming that a single question regarding “facial reconstructive surgery” actually solicited information regarding cosmetic surgery. Because the juror did not conceal any information, we hold that the trial court abused its discretion in granting the new trial on this ground of juror misconduct.
Reconstructive surgery is defined as “surgery that aims at restoring function or normal appearance by remaking defective organs or parts.” Webster’s Third New International Dictionary 1898 (3d ed.1971). The juror’s face and chin were functioning, and no evidence was submitted that she lacked “normal appearance,” nor was there any evidence that the juror’s face or chin was “defective.” Webster’s defines “defective” as “wanting in something essential: falling below an accepted standard in regularity ... or in adequacy of function.” Webster’s Third New International Dictionary, 591 (3d ed.1971). The juror’s answer was correct pursuant to the definition of “facial reconstructive surgery.”
Elective cosmetic surgery aims to improve appearance. A facelift with chin implant is not “facial reconstructive surgery” regardless of the changes resulting from the surgery. Cosmetic surgery is defined as “relating to or making for beauty ... correcting defects especially] of the face.” Webster’s Third New International Dictionary 514 (3d ed.1971). The juror desired to improve her appearance; she had not suffered any injuries or disease that impaired function or appearance. In fact, the trial court itself referred to the juror’s chin implant as “chin augmentation,” which the court referred to as “reconstructive.” While both types of surgery might affect a “defect,” reconstructive surgery seeks to restore function or normal appearance; cosmetic surgery seeks to enhance beauty.
Augmentation may or may not be reconstructive, but no evidence was submitted by Appellee that the juror’s chin augmentation was performed to restore her chin to “normal” appearance or to restore function. If the juror had suffered an accident that severely injured her chin, requiring that it be reconstructed by a plastic surgeon, then the surgery would have required the juror to answer yes to counsel’s voir dire question.
The procedures, furthermore, were not considered reconstructive surgery by the juror’s surgeon or office staff. Without any further elaboration by Appellee’s counsel, the phrase “reconstructive surgery” would ordinarily be understood to mean remedial surgery to rebuild or restore injured bones, body parts, or skin. A potential juror cannot and should not conceal information or fail to answer questions completely, but where a juror correctly answers a question, it is counsel’s responsibility to inquire further if more information is needed.
In Mitchell v. State, 458 So.2d 819 (Fla. 1st DCA 1984), this court held that the question by the court inquiring whether any potential juror had a family member, relative, or friend who worked at a prison was “clear and straightforward.” This court found that a juror concealed information when she did not reveal that her nephew worked at a correctional insti *918 tution. In the case at bar, Appellee’s counsel’s question was straightforward only to the extent that it referred to reconstructive surgery, not cosmetic surgery. At best, counsel’s question was ambiguous. A juror’s answer to an ambiguous question cannot constitute concealment of material and relevant information. . Thus, a juror’s answer to an ambiguous question cannot constitute juror misconduct necessitating a new trial.
Was the Juror’s Purported Failure to Disclose Attributable to Counsel’s Lack of Due Diligence ?
We find that any purported failure by the juror to disclose information was attributable to counsel’s lack of diligence. In explaining the due diligence burden of a party alleging juror misconduct, the Florida Supreme Court has held:
‘[T]he due diligence test’ requires that counsel provide a sufficient explanation of the type of information which potential jurors are being asked to disclose, particularly if it pertains to an area about which an average lay juror might not otherwise have a working understanding. Thus, resolution of this ‘diligence’ issue requires a factual determination regarding whether the explanations provided by the judge and counsel regarding the kinds of responses which were sought would reasonably have been understood by the subject jurors to encompass the undisclosed information. ■
Roberts v. Tejada, 814 So.2d 334, 343 (Fla.2002) (emphasis added).
We recognize that the standard of review in this case requires us to give great deference to any factual findings made by the trial court. Garnett v. McClellan, 767 So.2d 1229, 1231 (Fla. 5th DCA 2000). We cannot simply substitute our opinion if the trial court’s view was supported by record facts. We find, however, no factual support for the trial court’s conclusion that Appellee provided a “sufficient explanation” of what he meant by the phrase “facial reconstructive surgery” that would have been reasonably understood by the potential juror to include her cosmetic surgery.
In this case, Appellee’s counsel did not provide prospective jurors with any specific example of what he meant by “facial reconstructive surgery.” Cf. Roberts, 814 So.2d at 344 (noting that counsel clarified the trial court’s voir dire question regarding prior litigation when he “explained that the subject matter addressed ‘any kind of lawsuit, a divorce, a collection of a debt, a breach of contract, ... anything at all.’ ”) (emphasis added). Unlike Roberts, in this case no prospective juror answered Appellee’s question in the affirmative. In fact, Appellee’s counsel’s only implied examples were four previous “hospital” surgeries that Appellee had experienced, including “one of which was reconstructive surgery.” In addition, counsel stated that Appellee would undergo a fifth surgery which would be performed to “reconstruct her jaws.” Counsel provided no other description of Appellee’s surgeries. Thus, we find that the trial court abused its discretion in finding that Appellee demonstrated adequate due diligence to justify its order granting a new-trial based on the juror’s alleged concealment.
Accordingly, we find that the trial court abused its discretion by granting Appel-lee’s motion for new trial. We reverse the trial court’s order and remand for reinstatement of the jury’s verdict.
REVERSED and REMANDED.
WOLF and HAWKES, JJ., concur.